UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| JONATHAN S. NIXON, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | ) No. 3:08 CV 101 |
| | ) |
| SUPERINTENDENT, | ) |
| | ) |
| Respondent. | ) |

## OPINION AND ORDER

Jonathan S. Nixon, a *pro se* prisoner, filed this habeas corpus petition challenging a prison disciplinary determination in which he lost 180 days earned credit time. (DE # 1.) In MCF 07-11-0293, a Disciplinary Hearing Body ("DHB") at Miami Correctional Facility found Nixon guilty of committing battery upon another person and inflicting serious injury in violation of A102. On November 27, 2007, Internal Affairs Investigator Chris Ramberger wrote a conduct report stating as follows:

> On 11-25-07 approximately 20:50 p.m. Sgt. B. Williams responded to NHU in regards to an offender that was beaten up. Upon his arrival Offender Larry Washington, 159627 was at the front door with a swollen face and multiple abrasions. Williams asked Washington what happen[ed], he stated that Offender Jonathan Nixon, 136716 wanted his eggs that he brought back from the dining hall and Nixon's Bunkie Offender Ben Wilburn, 862724 wanted the eggs also. So instead of having problems with either of thoes [sic] offenders Washington ate the eggs himself. Nixon found out, went to Washington['s] cell started hitting him knocking him down on his bunk and then starting [sic] kicking him then left. Washington stated the same story to Williams after the medical examined him. Washington was taken to Dukes Hospital and then transported to Wishard Hospital for medical treatment.

(DE # 11-2 at 1.)

Pictures of the victim were attached. (DE # 11-2 at 3-8.) Ramberger provided a longer report detailing his internal investigation, but due its confidential nature this document has been filed under seal with this court. (*See* DE ## 13, 14.)

On December 3, 2007, Nixon was notified of the charges. (DE # 11-3.) He pled not guilty, requested a lay advocate, and requested certain witnesses and evidence. (*Id.*) Specifically, he requested statements from inmates he identified as a "white guy named Larry," and a "black man" named "Brightwood," as well as a statement from Officer Biggs, who could "confirm that he let Ofd. Nixon into his cell." He also asked that the DHB review all available surveillance videos. (*Id.*)

The disciplinary hearing was originally scheduled for December 4, 2007, but was postponed due to "unavailability of staff and witnesses." (DE # 11-4.) The DHB indicated that the rescheduled hearing would take place on December 12, 2009. (*Id.*) On December 5, 2007, a witness statement was obtained from Officer Biggs, who stated that he was "not on post when this incident took place." (DE # 11-5.) He further stated, "When I arrived on post in NHU evening chow was over and house was already locked down." (*Id.*) As for the other witnesses Nixon had requested, the screening officer reported "3-4 Larrys (unable to find)" and "unable to find no Brightwood." (DE # 11-3.)

On December 11, 2007, Nixon submitted a request for a continuance stating that he needed additional time to prepare a defense. (DE # 11-6.) He also requested the following evidence: information regarding staff shift changes on November 25, 2007, to determine when Sgt. Williams came on duty; any confidential statements taken from

2

Sgt. Williams; the door log to the unit for November 25, 2007; and a copy of the confinement report made when Nixon was put into segregation following this incident. (*Id.*) He wrote a separate letter to the DHB providing additional information about the inmate witness named "Larry" that he was requesting, stating: "I know that he lives in cell 434/433. He is a white male about 5'6" tall, dark brown hair, in mid to late 30s. Everybody in the dorm on 3/4 side of N-Housing knows him. He draws pictures." (DE # 11-7.) Nixon's request for a continuance was granted, and the hearing was rescheduled to be held on or before December 21, 2007. (DE # 11-11.)

On December 20, 2007, the DHB reviewed the surveillance videos as requested by Nixon and reported as follows:

> Camera for N 3/4 (Side 1) shows "problem reported"--no data found. Camera for N 3/4 (Side 2) shows bottom range and lower stairwell. Cell 437/438N is not on view. No audio available.

(DE 11-13 at 2.) On that same date, a three-member DHB conducted a disciplinary hearing, found Nixon guilty, and imposed a sanction of 180 days of lost earned credit time, a credit class demotion from credit class I to class II, and six months disciplinary segregation. (DE # 11-13 at 1.) In making its determination, the DHB stated that it was relying on staff reports, photographs, witness statements, and the confidential investigation report. (*Id.*) The DHB determined that the documents requested by Nixon were irrelevant, and that it was unable to obtain a statement from "Larry" because Nixon "could not produce exact location." (*Id.*) The DHB further indicated that it had reviewed Sgt. Williams' statement, which was being kept confidential for safety and

security reasons, and that it had reviewed the entire confidential investigation report as well as confidential medical information about Washington's injuries. (DE # 11-13 at 3.) Based on the evidence, the DHB found Nixon guilty. Nixon's appeals to the facility head and the final reviewing authority were denied. (DE ## 11-14, 11-15, 11-16, 11-17, and 11-18.)

Nixon raises seven claims in his petition. In Grounds One and Three, he asserts that he was denied his right to call witnesses and present evidence in his defense. (DE # 1 at 4, 7.) A prisoner has a limited right to call witnesses and present documentary evidence in his defense consistent with correctional goals and safety. *Wolff v. McDonnell*, 418 U.S. 539, 566 (1974); *Sweeney v. Parke*, 113 F.3d 716, 719-20 (7th Cir. 1997), *overruled on other grounds by White v. Ind. Parole Bd.*, 266 F.3d 759, 765-66 (7th Cir. 2001). A prison disciplinary committee may deny witness or evidence requests that threaten institutional goals or are irrelevant, repetitive, or unnecessary. *Piggie v. Cotton*, 342 F.3d 660, 678 (7th Cir. 2003). Furthermore, a DHB's improper exclusion of evidence will be deemed harmless unless there is some indication from the record that the evidence "might have aided [the prisoner's] defense." *Id.* at 666.

Here, Nixon argues generally in his petition and traverse that the DHB improperly excluded his requested witnesses and evidence. (DE # 1 at 4, 7; DE # 17 at 3-4.) The record shows that the DHB obtained a witness statement from Officer Biggs and reviewed surveillance video as Nixon requested.

(DE ## 11-5, 11-13 at 2.) Neither piece of evidence proved to be exculpatory, and so Nixon's due process rights could not have been violated with respect to this evidence.

The DHB rejected Nixon's request for evidence regarding the shift change and the door log, finding this irrelevant since Nixon had admitted to Ramberger that he was in Washington's cell on that date. This court has independently reviewed the confidential report, and concludes that the DHB's determination is supported by the record. Given that Nixon admitted being at the scene of the incident, the door log and shift change records would not have aided in his defense. Moreover, Sgt. Williams never stated that he witnessed the incident, only that the incident was reported to him by Washington sometime after it occurred. (*See* DE # 11-2 at 1.) Nixon also requested a copy of the confinement report made when he was taken into segregation, but this had no apparent bearing on the underlying incident with Washington, and Nixon has not explained why this evidence was exculpatory or relevant.

As for Nixon's request for inmate witnesses, the screening officer attempted to locate an inmate named "Brightwood" but found no such person. (DE # 11-3.) Nixon provided the DHB with no other identifying information on this inmate, and there is nothing in the record to indicate that the DHB acted improperly in failing to locate him. A different analysis applies to Nixon's request for the inmate witness "Larry." Although Nixon was initially vague about Larry's identity, when told by the screening officer that there were multiple inmates named Larry in the unit, Nixon provided additional identifying information about him, including Larry's cell number, his race,

5

height, weight, and other identifying features. (DE # 11-7.) Given that Nixon provided Larry's exact cell number, the DHB's determination that it was unable to locate Larry because Nixon "could not produce exact location" is unsupported by the record. (*See* DE # 11-13 at 1.)

Nevertheless, the court will not reverse unless there is some indication that this evidence would have aided Nixon's defense. *Piggie*, 342 F.3d at 666. In his petition and traverse, Nixon does not provide any detail about how Larry's statement would have been exculpatory. In the letter he submitted to the DHB requesting this witness, he made vague statements about Larry having been present in his own cell during the times that Nixon's cell door was opened on the date in question, and also provided seemingly irrelevant information about a conversation he and Larry had that day regarding a drawing Larry was working on. (DE # 11-7.) In that same letter, he admitted that he was out of his cell during the evening hours, around the time when this incident occurred. (*See id.*) As the DHB noted, Nixon also admitted to Ramberger that he was in Washington's cell on the date in question, although he denied beating him. Given Nixon's admissions about his whereabouts that day, and his vague statements about the relevance of Larry's testimony, he has not shown that Larry's testimony would have aided his defense. Accordingly, the court declines to reverse on this ground.

In Ground Two, Nixon asserts that he was denied his right to an impartial decision maker. (DE # 1 at 4.) Adjudicators in the prison disciplinary setting are entitled

to a presumption of honesty and integrity, and the constitutional standard for impermissible bias is high. *Piggie*, 342 F.3d at 666. Due process is violated when officials who are directly or substantially involved in the factual events underlying the disciplinary charges, or the investigation thereof, also serve on the DHB. *Whitford v. Boglino*, 63 F.3d 527, 534 (7th Cir. 1995).

Here, Nixon asserts in his petition that one of the DHB members was "unqualified." (DE # 1 at 4.) He does not address this claim at all in his traverse. (*See* DE # 17 at 1-7.) Although it is not entirely clear, it appears Nixon may be complaining that one DHB member did not view the surveillance video; the DHB's report indicated that only two members viewed the video due to a "staff shortage." (DE # 11-13 at 2.) This is not the type of impermissible "bias" needed to establish a due process violation. Even if it was, the surveillance video did not provide any meaningful evidence in this case, either exculpatory or inculpatory, since one camera was not working and the other was pointing in the wrong direction. The failure of one DHB member to review this evidence firsthand could not have impacted the DHB's determination. In short, Nixon has failed to establish that he was denied an impartial decision maker, and this claim is denied.

In Ground Four, Nixon claims that he was denied his right to a written statement by the fact finder. (DE # 1 at 7-8.) A prisoner is entitled to a written statement by a fact finder of evidence relied on and the reasons for the disciplinary action. *Wolff*, 418 U.S. at 566. The written statement requirement is "not onerous." *Scruggs v. Jordan*,

485 F.3d 934, 941 (7th Cir. 2007). Instead, "[t]he statement need only illuminate the evidentiary basis and reasoning behind the decision." *Id.* Here, the record shows that Nixon was given a copy of the disciplinary hearing report detailing the evidence the DHB relied on and the reasons for its decision. (DE # 11-13.) This satisfied due process.

Nixon also appears to be complaining that he was not able to review the confidential internal investigation report or the confidential statement made by Sgt. Williams, but "prison disciplinary boards are entitled to receive, and act on, information that is withheld from the prisoner and the public . . . ." *White*, 266 F.3d at 767. Due process does require that confidential information bear sufficient indicia of reliability. *Whitford,* 63 F.3d at 535. Reliability can be established based on (1) the oath of the investigating officer as to the truth of his report; (2) corroborating testimony; (3) a statement on the record by the chairman of the disciplinary committee that he had firsthand knowledge of the sources of information and considered them reliable on the basis of a past record of reliability; or (4) an in camera review of the material. *Id.* If a DHB fails to indicate the information's reliability, the district court may conduct its own review. *Henderson v. United States Parole Comm'n*, 13 F.3d 1073, 1077 (7th Cir. 1994); *Wells v. Israel*, 854 F.2d 995, 999 (7th Cir. 1988). This court has independently reviewed the entire internal affairs file, and without revealing the contents of the file so as to compromise institutional safety, concludes that it contains reliable evidence to support the DHB's finding of guilt. Accordingly, this claim is denied.

8

In Grounds Five and Six, Nixon asserts violations of DOC policies and other errors, such as that the conduct report was improperly filled out and contained a typographical error regarding the date of the incident in one place on the report, which was later corrected by the DHB. (DE # 1 at 5-6; DE # 11-2 at 1.) Relief in a federal habeas corpus proceeding is only available for a violation of the U.S. Constitution or laws, and violation of internal prison policies or other state laws do not state a claim for federal habeas relief. *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). Nixon's claims regarding violations of internal prison policies or other minor irregularities do not provide a basis for granting federal habeas relief. Accordingly, these claims are denied.

Finally, in Ground Seven, Nixon asserts that he was denied a proper review of his first level appeal. (DE # 1 at 6.) Specifically, he complains that the document denying his appeal was signed by someone with the initials "AC" rather than by the warden, Walter Martin. (*See* DE # 11-14.) *Wolff* does not guarantee prisoners any type of appeal rights; at most Nixon has alleged a violation of DOC policy, which does not raise a cognizable claim in this proceeding. *Estelle*, 502 U.S. at 67-68. Even assuming this somehow states a due process claim, DOC policy provides that the first level appeal is to be decided by the warden or his "designee," and so there would be no error based on the fact that the warden's designee decided Nixon's appeal. (DE # 11-21 at 3.) Accordingly, this claim has no merit.

For the foregoing reasons, the habeas corpus petition (DE # 1) is **DENIED**.

**SO ORDERED.**

Date: December 1, 2009

                                       s/James T. Moody
                                       JUDGE JAMES T. MOODY
                                       UNITED STATES DISTRICT COURT